Final Decision
I Background

A. Introduction

These actions arise out of Mr. Owen Somers’ employment and licensure as the Security Director for the Oneida Bingo & Casino. Over the last several years the relationship between Mr. Somers, the Casino and Oneida Gaming Commission has been contentious, to say the least. Mr. Somers has been terminated from employment twice, reinstated once and had his gaming license application denied. (In between and among these events, Mr. Som-ers sued the Casino and various Casino management officials alleging violations of the Oneida Gaming Ordinance. See Somera v. Oneida Gaming Commission et al., 05-TC-085, 2007 WL 7059452 (1/23/07).) The crux of these cases is the denial of Mr. *232 Somers’ gaming license in December 2007, Based on his failure to obtain a gaming license, his employment was terminated. Mr. Somers appealed his termination from employment through the proper channels. The Casino has stated that his employment depends solely on the outcome of the licensure issue. Therefore, the cases have been consolidated,
The Oneida Gaming Commission denied the application based on six incidents involving Mr. Somers’ conduct, finding that he was not qualified to hold a gaming license based on Sec. 21.10—3(a)(3) Qualifications of the Oneida Nation Gaming Ordinance (ONGO) which states:
The Tribe shall conduct a criminal history check on all applicants. The criminal history check shall include a check of criminal history records information maintained by the Federal Bureau of Investigation, as well as state and local governments. The Tribe shall interview a sufficient number of knowledgeable people, such as former employers and personal references, in order to provide a basis for the Tribe to make a finding concerning eligibility, and the Tribe shall document potential problem areas and disqualifying information regarding applicants.
(a) No person shall be licensed as a gaming employee if:
(1) He or she is under the age of 18.
(2) He or she has been convicted of, or entered a plea of guilty or nolo contendere to any of the following offenses and the conviction has not been pardoned by the Tribe or otherwise removed from the record by executive pardon or state court order:
(A)A felony;
(B) Any offense involving fraud or misrepresentation; or
(C) Any gaming related offense, in-eluding a violation of the provisions of the State gaming laws made applicable to the Tribe pursuant to the Compact or a Tribal gaming law.
(3)His or her prior activities, criminal record, or reputation, habits, or associations pose a threat to the public interest, threaten the effective operation of gaming, or enhance the dangers of unsuitable, unfair, or illegal practices, methods, or activities in the conduct of gaming;
This section of the Oneida Nation Gaming Ordinance essentially states that a person is not fit to hold a gaming license if his background and prior activities will jeopardize the gaming facility’s operation.
The evidence presented by the Oneida Gaming Commission does not support its conclusion. Because we find the Oneida Gaming Commission’s decision is clearly erroneous and against the weight of the credible evidence presented at the original hearing, we reverse the Oneida Gaming Commission’s decision.

B. Jurisdiction

The Oneida Tribal Judicial System has jurisdiction over this appeal of the Oneida Gaming Commission decision under Sec. 21.10—11(a) which states that any person aggrieved by a final decision to deny a license may appeal the decision to the Oneida Appeals Commission. We also have jurisdiction under Sec. 1.11—1 of the Administrative Procedures Act which permits appeal of a final decision in a contested case.
C. Factual Background
The Oneida Gaming Commission decision relies on six incidents involving Mr. *233 Somers’ conduct over the course of about two and a half years. On December 3, 2007, the Oneida Gaming Commission sent a certified letter to Mr. Somers informing him that he was denied a gaming license due to his unsuitability and listed the following incidents as reasons. We summarize each incident, presenting them in chronological order.
12/11/03: Theft (Suitability)
12/29/03: Failure to Dismiss Employee in Timely Manner (Suitability)
06/29/04: Failure to Use Proper Judgment (Suitability)
07/14/05: Release of Confidential Information to Oneida Appeals Com. (Suitability)
07/13/06: Gas Tax Fraud (Suitability)
08/17/06: Harassment/Disturbance (Suitability)
Incident # 1 December 11, 2003—Theft. (Giving Tree Gift)
Summary of Timelines of the Events
This incident, titled “Giving Tree Gift” in the Oneida Gaming Commission’s decision, took place on December 11, 2003. The Oneida Bingo & Casino sponsored a “Giving Tree” where needy children had their names on the Christmas tree and employees picked their names off and brought gifts for them to a reception where those who brought a gift received a raffle ticket. Two Green Bay Packer tickets were one of the prizes. Somers is accused of stealing one of Chad Cornelius’ gifts out of his office with the alleged motivation to get a raffle ticket.
On 12/11/03—Assistant Gaming General Manager e-mailed the Gaming General Manager about the incident by telling him what he had found out through investigation of the matter.
On 12/15/06—Somers’ Assistant Amy Griesbach gave her written statement
Somers gave her a gift to bring down for him to the toy drive since she was on her way down. She does not know how Owen received the gift, and when you hand in gifts you are entered into a drawing. She was also interviewed by the Oneida Chief of Police in the spring/summer of 2004 and was shocked because she didn’t know there was an issue in this matter.
On 01/11/07—Chad Cornelius gave his written statement.
He picked four children’s name off the giving tree. The four gifts were stored in his office before reception. He noticed before he went down to the reception that one gift was missing and became concerned. It was mentioned that Owen may have taken one and redeemed it for an entrance raffle ticket. A few days later Owen asked if there was a problem with the gift, and that he had taken it. I was not concerned after that because the gift was returned to the Program. The Oneida Chief of Police dropped by Chad’s home a few months later unannounced and was basically pushing the issue. Chad felt uncomfortable and unhappy with the situation because he did not want the Chief of Police at his house with guest and family. He gave the Chief a statement.
On 01/16/07—Amanda Miller, an Oneida Casino office Coordinator under the Supervision of Chad Cornelius, gave her written statement.
Mr. Somers asked her what the gifts were for and she told him about the giving tree and an entry into a raffle if you brought a gift. She joked with him that Chad had plenty and maybe he should borrow one of Chad’s gifts. She was also interviewed by the Chief of Police in the summer of 2004.
*234 On 01/17/07—Kelly Skenandore gave a written statement.
Skenandore and Chad Cornelius looked for Chad’s missing gift in his office to no avail. Amy Griesbaeh was working the registration table and told Chad that Somers had brought the missing gift down to the meeting. Chad mentioned incident to “Assistant Gaming General Manager who then became upset about it.”
The following is based on testimony from the record from the hearing held by the Gaming Commission on March 13 and 14, 2008. Chad Cornelius did not believe that the incident was a big deal. He did not report the incident but was approached by the Assistant Gaming General Manager who asked him to write a complaint. When Chad declined to do so, the Assistant Gaming General Manager wrote a complaint on his behalf and reported that the reason that Chad did not make a complaint was because Chad’s relationship with Somers had been strained. During testimony Chad states, “I don’t believe Owen and I had a difficult relationship. Owen’s the type of person that I would go to and talk to find a different perspective. Actually, we had quite a few conversations. He’s a good guy. Again, what happened and what I’m reading is not the same.”
In the testimony from Owen Somers, he claims he did not know anything about Packer tickets or any kind of raffle. Owen admits he asked one of the office staff girls if he could take one of the gifts because Owen’s assistant didn’t have anything to take down there and he was given permission. He gave the gift to Amy to carry down so she wouldn’t be embarrassed walking in without anything. Owen states he was just being friendly. When asked if he was told by Chad’s assistant (Amanda Miller) if she was kidding that he could take a present, Somers stated “No, she never said anything about kidding 1 didn’t know the gal that well, but asked if I could take one of them. ‘Sure, go ahead.’ Well, if you’re kidding, I didn’t hear anything saying ‘I’m kidding.’ ”
This matter was apparently investigated twice. The first time was shortly after the incident because the Assistant Gaming General Manager brought it to the attention of the Gaming General Manager. No charges came from the first investigation. The second time was in 2007 when Somers was undergoing his background investigation in order to receive a gaming license. This time the Oneida Gaming Commission concluded that the incident “reveals a pattern of conduct that demonstrates the Applicant’s (Somers) lack of judgment and indifference to the property and interests of others.” As found in Oneida Gaming Commission Decision, Conclusions of Law at ¶ 40.

Incident #2—December 29, 2003—Fail-ure to dismiss an employee in a Timely Manner. (Clark Landry License Revocation)

Mr. Somers was terminated in 2004 for failing to dismiss an employee in a timely manner. This incident, titled “Clark Landry License Revocation” in the Oneida Gaming Commission decision, took place over several months. Mr. Somers was eventually terminated in 2004 over this incident. On appeal, the Oneida Personnel Commission ordered that Somers be reinstated. Somers v. Cornelius, 04-SUS-011 & 04-TER-010 (Oct. 10, 2005).
Summary of Timelines of the Events
12/04/03—Landry, a licensed security officer at Oneida Bingo & Casino, was charged in Brown County with two felony counts of burglary and one felony count of carrying a concealed weapon.
*235 12/09/03—Landry placed on Investigative Leave. TR 111:21. OGC Admin. Rec. Vol. I at 36.
12/22/03—Oneida Gaming Commission sent a certified letter to Landry RE: Official Notification of Summarily Suspension. Oneida Gaming Commission cites Oneida Comprehensive Gaming Ordinance, Article XVI.B.6.b.a.iii and Article XVI. B.6.b.b.
12/29/03—Memo from Oneida Gaming Commission to the General Gaming Manager, Background Investigations Dept., Internal Security Dept., HRD, and Clark Landry. RE: Dismissal of Employee. “Please initiate the dismissal process for the following employee currently working within the Oneida Gaming Division as their Oneida Gaming License has been revoked.”
12/31/03—memo from 12/29/03 is received by Mr. Somers’ Assistant, Amy Griesbach, asked the General Manager what to do with it. She says he told her “to hold off until Monday until they could all meet and talk about it and discuss it.” (The General Manager of the Casino did not testify at the Gaming Commission hearing and Ms. Griesbach’s testimony is uncontested.)
01/07/04—Mr. Somers’ Assistant returns to work and Mr. Somers informs her that the Oneida Gaming Commission will be sending a new letter. She writes “Void” on the 12/29/03 memo for her records. She also testified that “Mr. Somers already had the talk with everybody before I got to work on the 7th.”
There is a dispute over whether a conference call including Mr. Somers and the relevant Oneida Gaming Commissioners and Casino officials took place discussing how to handle Mr. Landry’s situation. Mr. Somers is the only one who testified the call took place while the other alleged participants either did not testify or stated there was no such call.
In the alleged conference call Mr. Som-ers advised the Oneida Gaming Commission that Wisconsin “requires a conviction before you terminate an employee” and “we had already put him on investigative leave, that all the assets were protected, he was banned from the casino, he wasn’t getting paid, he had to turn in all of his equipment. And they all agreed with me.” Mr. Somers in part relied on this call in taking the actions he did.
05/21/04—memo from Mr. Somers to the Chair Person at Oneida Gaming Commission informing her that “on May 19, 2004, Mr. Landry was charged with two (2) counts of Felony Burglary-Building or Dwelling. Though Mr. Landry’s sentencing hearing is not scheduled until July 20, 2004, I feel these charges still make Mr. Landry ineligible for a gaming license. This office will not proceed with a dismissal until we hear from your office.” Mr. Somers’ Memo to Oneida Gaming Commission, Oneida Commission Admin. Rec. Vol. IV at 71. Other documents confirm Landry was convicted on 05/19/04.
06/11/04—Memo to Oneida Gaming Commission from Officer Huff, Oneida Gaming Commission Investigator RE: Felony Conviction for Clark Landry. “This memo is being generated to the Oneida Gaming Commission as follow up to a memo from Internal Security Director Owen Somers to Louise Cornelius ... dated May 21, 2004. I am asking to have this placed on the next scheduled Oneida Gaming Commission Agenda, for the Oneida Gaming Commission to discuss.” And, “it appears Gaming General Manager, and the Internal Security Department, were already instructed to dismiss ... Landry.” Huff Memo to Oneida Gaming Commission, Oneida Gaming Commission Admin. Rec. Vol. IV at 13.
*236 It appears that the Oneida Gaming Commission did not respond to Mr. Som-ers’ request for a response regarding the 5/21/04 memo. The record shjws no response from the Gaming C ommission to Mr. Somers’ memo. Instead Oneida Gaming Commission began an investigation into Owen Somers.
06/16/04—Memo from Mr. Somers to Oneida Gaming Commission references the 05/21/04 memo he sent requesting permission to process dismissal paperwork on Landry. And he asks them to recall the conference call that took place on 01/07/04 “to hold off on the dismissal because my office had already put Mr. Landry on Investigative Leave due to these pending charges. It was noted the Commission would send my office a new letter addressing this, however we did not receive anything to date.”
06/29/04—Letter from Mr. Somers to Landry, Subject: Dismissal from Employment. The letter reminds Landry, that because his license was revoked on 12/29/03, he is “ineligible for employment within gaming operations. Therefore, based on this information, the charges that you were recently convicted of, and per the directive of the Gaming Commission this letter is to inform you that you are being dismissed from employment ... as of June 30, 2004.”
On 07/12/04—a memo from Mr. Somers to Oneida Gaming Commission informing them that the Security Dept, “upon request of the Oneida Gaming Commission, took action to dismiss Clark Landry from employment due to the revocation of his Oneida Gaming License.”
On 08/05/04—the Oneida Gaming Commission sent a letter to Chief of Police to aid in his investigation summarizing the allegation against Mr. Somers for “negligence of duties” by not “carry[ing | out the directives in a timely manner.”
On 08/10/04—the Oneida Chief of Police terminates Mr. Somers for failing “to follow through on employee dismissal procedure in a timely manner.”
On 10/10/05—the Oneida Personnel Commission ordered that Mr. Somers be “reinstated to his former position” and “any and all records pertaining to this case shall be removed from the Petitioner’s personnel file.” Oneida Personnel Commission, 04-SUS-011 & 04-TER-010 (Oct. 10, 2005).
On 12/21/05—the Oneida Tribal Judicial System, Appellate Court denied the Oneida Police Department’s appeal of the Oneida Personnel Commission’s decision that reinstated and cleared Somers of the Landry incident. Oneida. Police Department v. Somers, 05-AC-023.
Incident # 3—June 29, 2004—Failure to Use Proper Judgment. (Pardon Investigation)
This incident arose from a complaint issued by the Oneida Business Committee Chairwoman against Mr. Somers for calling her office three times to inquire about a pardon given to an employee who was working in the vault at the Casino. It was brought to Mr. Somers’ attention that the employee was banned from the Casino. Somers contacted the Chairwoman’s office to find out if the pardon granted this employee was for the offense for which he had been banned from the Casino. The Chairwoman disagreed with Somers’ approach to the situation and filed a complaint against him.

Summary ¡Timeline of Events

On June 13, 2004, Security Officer, Benjamin Sokol, e-mailed Deanna Klescewski, Somers’ assistant, informing her that one of the officers on the second shift found a permanent ban on a vault employee. The employee was banned in 1993 for Theft.
*237 Klescewski e-mailed back to Sokol: stating that it looked like the ban was still active, according to his file. Klescewski agreed to bring Sokol’s email to Mr. Somers’ and the investigators’ attention for their review and follow-up.
In June, 2004, Mr. Somers then made an inquiry to the Chairwoman’s office. He was unsuccessful in getting any information, except the fact that there was a pardon and its date.
Mr. Somers was advised he could not receive information as to whether the pardon was for theft at the Casino, even though Mr. Somers had the complete file from the official investigation. Mr. Som-ers e-mailed the Chief of Police explaining he had tried to get pardon information on a cage employee and that the Chairwoman’s Assistant would not help Mr. Somers. The Assistant did not provide Mr. Somers with the requested information and informed him that he had to go through the chain of command. Mr. Somers’ office had information that the employee in question was arrested for theft by Oneida Police Department in 1993.
Mr. Somers emailed the Chief of Police explaining the situation and asking for help. The Chief of Police e-mailed Somers back: “I will take care of it and hopefully get the information you are looking for.” The Chief of Police e-mailed the Chairwoman’s Assistant: stating that Mr. Som-ers had gone through his chain of command in reference to the individual in question and asking for the information on the pardon.
On June 29, 2004, the Chairwoman sends a confidential memo to Chief of Police, RE: Formal Complaint against Owen Somers. She states that “Mr. Somers has clearly failed to exercise proper judgment (Blue Book sect. V.D.IV.j) in contacting my office directly (on 0/15/04, 6/17/04 and 6/28/04) rather than making his request through the proper chain of command in seeking confidential pardon information on an individual (not in his department) that works at the Casino.” The memo cites the Oneida Pardon Ordinance, Sec. 5.5-5(g):
All information gathered in this process will be confidential before and after a final decision is made. Information regarding the review process may only be obtained by the Backgrounds Department, the Pardon Screening Committee, the Oneida Business Committee, and the Petitioner with a signed request.
The memo goes on to state that Mr. Som-ers did not have the authority to see the information about “the specific offense of the individual” that he was requesting. The memo also questions his motives as appearing “suspect” and that “the specific information he is asking for is (not) part of his job duties.”
Incident #4—July 14, 2005—Release of Confidential Information to the Oneida Appeals Commission. (Handling of Confidential Documents)
This incident started in mid 2005 when Mr. Somers gave a copy of the Memorandum of Understanding and Agreement (MOU), executed in May 2005, between the Oneida Gaming Commission, Oneida Bingo & Casino General Manager, Oneida Chief of Police, and the Oneida Interim Security Director, to the Oneida Tribal Judicial System requesting an injunction to stop Respondents from taking actions allegedly in violation to the Oneida Nation Gaming Ordinance. Somers v. Oneida Bingo & Casino General Manager, 05-TC-086, 2006 WL 6488211 (March 29, 2006).
Mr. Somers anonymously received confidential documents related to the possible transfer of the Security Department from casino management to the Oneida Gaming Commission. Mr. Somers subsequently *238 included the documents in a law suit filed in the Oneida Tribal Judicial System wherein Mr. Somers claimed the proposed transfer was illegal. When Mr. Somers received these documents he was not employed by the Tribe and was litigating his reinstatement

Summary/Timeline of Events

May 2005—MOU executed by Respondents.
June 2005—Respondents execute another agreement to divide up the personnel and budget of the Internal Security Department.
7/14/05—Mr. Somers filed a Motion for Injunction and Motion to Stay against Respondents.
7/22/05—Oneida Tribal Judicial System Trial Court issued an injunction ex parte.
8/01/05-2/27/06—Respondents filed various Motions to Dismiss.
3/29/06—Oneida Tribal Judicial System issued the decision, Somers v. Oneida Bingo & Casino General Manager, 05-TC-086, 2006 WL 6488211 (March 29, 2006). The Court addressed the following three issues and denied all of the Respondent’s motions to dismiss.
(1) Do Respondents enjoy Sovereign Immunity thus depriving the Oneida Tribal Judicial System jurisdiction? No.
(2) Does Petitioner have standing? Yes.
(3) Did Petitioner state a claim upon which relief can be granted? Yes.
6/6/06—Respondent executed another MOU rescinding the 2005 MOU and testify that “their intention evaporated when this lawsuit was commenced.” Somers v. Oneida Chief of Police, 05-TC-086, —• Am. Tribal Law-, 2007 WL 7032538 (Jan. 23,2007).
The law suit was eventually dismissed as moot when the respondents stated they were no longer going through with the proposed transfer.

Incident #5—July 13, 2006—Gas Tax Fraud. (Tax Exempt Gasoline Purchases)

This incident happened on July 13, 2006 at the Oneida One Stop at E and EE where Mr. Somers tried to buy tax exempt gas.
Between April and July of 2006, Mr. Somers purchased gasoline about 20 times without paying the state imposed gasoline tax. The Tribe takes the position that only tribal members who reside on the Oneida Reservation can purchase gasoline on the Reservation exempt from the State tax. Mr. Somers does not reside on the Reservation and therefore, in the Tribe’s view, is not exempt. Mr. Somers’ position is that all tribal members, regardless of residence, are eligible for the exemption. The Tribe uses a system under which tribal members must obtain a special sticker which verifies their eligibility for tax exempt purchases at tribally-owned gas stations.
On July 13, 2006, the issue came to a head when Mr. Somers attempted to purchase tax exempt gasoline. The cashier requested to see the verification sticker, which Mr. Somers does not have. Mr. Somers became upset and contacted the Director of the Retail Division to complain. The Director sent Mr. Somers an application for a tax exempt eligibility determination.
The Oneida Gaming Commission determined that Somers’ explanations of why he continued to purchase tax exempt gasoline were “not credible,” and that consequently his actions “demonstrates his willful disregard for applicable laws and regulations with which he does not agree.” Id. at ¶ 68 and ¶ 23, Thus it concluded Somers is *239 unsuitable for a gaming license. Id. at ¶ 25.
While this appeal has been pending, the Oneida Business Committee passed Resolution # 1-14-09-F Oneida Retail which applies the motor vehicle fuel tax exemption to all members regardless of residence provided that Tribal members complete a motor vehicle fuel tax exemption application on an annual basis and provide a valid Tribal ID card at the point of purchase. Kalihwisaks March 16, 2009.

Incident #6—August 17, 2006—Harass-ment/Disturbance, (Norbert Hill Center Altercation)

This incident occurred on August 17, 2006 in the course of Mr. Somers’ litigation before the Oneida Personnel Commission. Somers had a verbal altercation with the Oneida Personnel Commission Administrator. The Administrator called the police who investigated and filed a report. No charges were filed. Mr. Somers testified at the hearing about the incident which Mr. Somers stated was caused by the Oneida Personnel Commission’s Administrator. The Administrator did not testify at the hearing.
The Oneida Gaming Commission dedicates four paragraphs to this incident in its “finding of fact” section, where it summarizes that the Administrator called the police to report that Somers was “verbally aggressive and abusive.” Id. at ¶ 89. And that no police charges arose from the alleged “altercation.” Id. at ¶90. In the Oneida Gaming Commission’s “conclusion of law” it states “[t]he Applicant’s involvement in the altercation at the Norbert Hill Center reveals part of a pattern of conduct that demonstrates the Applicant’s lack of judgment, lack of professionalism with eol-leagues and an inability to emotionally control himself, which was also evident during the hearing in this matter”

C. Procedural Background

Mr. Somers’ temporary work permit expired in September 2006 and shortly thereafter he applied for a gaming license. After more than a year of investigation, in December 2007 the Oneida Gaming Commission issued its final decision denying Mr. Somers’ application. Within weeks of the Gaming Commission’s decision, the Casino terminated Mr. Somers’ employment. With respect to his gaming license, Mr. Somers exercised his internal appeal rights and the Oneida Gaming Commission held a hearing on March 13 and 14, 2008. The Oneida Gaming Commission issued the final decision affirming the denial of his license on June 5, 2008. Mr. Somers timely appealed.
With respect to his termination from employment he timely appealed the Personnel Commission’s denial of the Initial Review and the case reached the Oneida Tribal Judicial System in February, 2008.

I). Applicable law

The applicable section of the Oneida Nation Gaming Ordinance reads as follows:
No person shall be licensed as a gaming employee if ... [h]is or her prior activities, criminal record, or reputation, habits, or associations pose a threat to the public interest, threaten the effective operation of gaming, or enhance the dangers of unsuitable, unfair, or illegal practices, methods, or activities in the conduct of gaming;
Sec. 21.10-3 (a)(3), ONGO.
II Issues
Was the decision of the Oneida Gaming Commission clearly erroneous and against the weight of the credible evidence?
*240 III Analysis
Was the decision of the Oneida Gaming Commission clearly erroneous and against the weight of the credible evidence?
Yes. When the record of this case is examined carefully in light of the applicable standard the Oneida Gaming Commission’s decision is clearly erroneous and against the weight of the evidence.
Before examining Mr. Somers’ six incidents, we review our case law in the area of gaming license denials and revocations. When reviewing our previous published decisions in this area, we find that in nearly every case, a revocation or denial is based on either 1) misconduct directly related to the gaming operations, usually occurring at the casino or 2) criminal conduct off property:
• Illegal gambling, at the casino. Doxtator v. Oneida Gaming Commission, 97-EP-0019,-Am. Tribal Law -, 1998 WL 35308603 (4/8/1998).
• Conviction for possession of THC and drug paraphernalia; falsified HRD application. Jorgenson v. Oneida Gaming Commission, 06-AC-001, — Am. Tribal Law -, 2006 WL 6469418 (7/7/2006)
• Cheating at black jack at another casino. Schommer v. Oneida Gaming Commission, 00-AC-019, — Am. Tribal Law-, 2001 WL 36228224 (5/10/2001).
• Mismanagement of slot machines, causing hundreds of thousands of dollars in overpayments to customers. Mahn v. Oneida Gaming Commission, 06-AC-035, — Am. Tribal Law-, 2007 WL 7032571 (8/16/2007).
• Poker dealer receiving $100.00 tip from patron at her table, where money is delivered secretly in casino parking lot. Kapla v, Oneida Gaming Commission, 07-AG-007 and 07-AC-008, — Am. Tribal Law -, 2007 WL 7032565 (8/14/2007).
• OWI felony conviction. House v. Oneida Gaming Commission, 02-AC-038, — Am. Tribal Law -, 2003 WL 25888523 (5/30/2003).
• Handling of two untagged cash boxes in hard and soft count room and mantrap area. Webster et al. v. Oneida Gaming Commission, 02-AC-025, — Am. Tribal Law -, 2003 WL 25888492 (3/27/2003).
In every case listed above the Oneida Gaming Commission decision to deny or revoke was upheld. These cases show a pattern. Conduct justifying revocation or denial of gaming license involves serious gaming-related misconduct, usually occurring while the employee is at work. In addition, individual conduct not related to gaming must be of a sufficiently serious nature (drug possession, theft, OWI convictions) to warrant revocation or denial.
Turning to Mr. Somers specific issues, we review each one of the incidents below in light of the applicable standards.
1. The Giving Tree Gift.
The Giving Tree incident is one of the weaker incidents offered by the Oneida Gaming Commission. The Oneida Gaming Commission decision goes a bit far given the record stating, that Mr. Somers took the gift without Mr. Cornelius’ permission and passed it off as his own. The decision then concludes Mr. Somers showed “a lack of judgment” and “indifference to the property of others.” The credible evidence in the record does not support this conclusion.
This incident basically boils down to whether one believes the Oneida Gaming Commission’s interpretation of the evidence, or Mr. Somers’ testimony. The *241 Oneida Gaming Commission’s interpretation requires one to believe that Mr. Som-ers intentionally took one of Mr. Chad Cornelius’ gifts out of his office, with the full knowledge of Chad’s assistant, to acquire a raffle ticket. Amanda Miller, as evidenced in her written statement, said she was joking when she told him he could take a gift, purchased by Chad Cornelius, without Mr. Cornelius’ permission in order to pass the gift off as his own. Thus the Gaming Commission concludes Somers committed theft.
On the other side, Mr. Somers’ testified that he was just being friendly and wanted to do a nice thing for his assistant while lightening the load on Chad. Mr. Somers also states he did not know anything about the raffle.
After reading all the testimony and evidence, the facts do not support a clear incident of theft. While it is established the gift was taken, it is not established Mr. Somers did so intentionally. He perhaps misunderstood Amanda Miller’s statement, but this creates a misunderstanding and not an incident of theft.
To completely discount Mr. Somers’ own * testimony is clearly erroneous. Mr. Som-Iers testified that Mr. Cornelius’ assistant Amanda Miller gave him permission to take a gift. This testimony is uncontested. Furthermore, Mr. Cornelius later downplayed the incident. At worst, it appears to have been a misunderstanding. It does not rise to the level of showing unsuitability especially when considered next to w blackjack cheats and convicted drunk drivers.
2. The Clark Landry Incident.
This incident was more serious, but when the facts are flushed out, the Oneida Gaming Commission’s conclusion is flawed. The Oneida Gaming Commission decision concludes Mr. Somers decision to not terminate the employment of a casino employee charged with multiple felonies posed a specific threat to the effective regulation of gaming. It stated Mr. Som-ers’ decision allowed such a person to “remain an employee of Oneida Bingo & Casino and therefore continue to be affiliated with the Oneida Nation’s gaming activities.”
This conclusion however ignores important facts. Mr. Somers suspended Mr. Landry’s employment pending the resolution of his criminal charges. Mr. Landry was not allowed to talk to gaming employees or come to the premises for any reason without the approval of Mr. Somers. These actions showed appropriate caution in handling Mr. Landry’s situation and undermine the Oneida Gaming Commission’s claim that Mr. Somers permitted any threat to the casino. Quite the opposite, Mr. Somers took steps to protect the casino and its assets.
In light of Mr. Somers’ action banning Mr. Landry from the property, the ensuing discussion over whether Mr. Landry’s employment should have been terminated looks like more of an academic exercise as opposed to willful disregard of policy and procedure. Whether terminated or suspended, there is no evidence Mr. Landry was anywhere near the casino, nor is there any evidence that Mr. Somers permitted a threat to the gaming facility.
Finally, we can’t help but note that Mr. Somers’ subsequent termination from employment based on this incident was overturned by the Oneida Personnel Commission and Mr. Somers was reinstated with full back pay. Somers v. Cornelius, 04-SUS-011 and 04-TER-010, — Am. Tribal Law-, 2005 WL 6410774 (2005).
This incident is against the weight of the evidence.
*242 3. The Pardon Inquiry
On June 15, June 17 and June 28, 2004, Mr. Somers requested confidential pardon information regarding an Oneida Tribal member who worked at the Oneida Bingo & Casino and possessed a gaming license. The Oneida Gaming Commission reasoned that Mr. Somers repeated requests for pardon information violated protocol and showed a lack of judgment.
There is no support for showing Mr. Somers violated any law, policy or rule. We are inclined to agree with Mr. Somers: if the Chairperson’s office could not provide the information it should have been clear and specific with the first contact. As far as showing a lack of judgment, no one would receive a gaming license if their entire life was placed under a microscope and culled for “lack of judgment.” Lack of judgment is not included as a basis for denying a gaming license under See. 21.1G-3(a).
The Oneida Gaming Commission’s conclusion is clearly erroneous and against the weight of the credible evidence. There is no evidence in the record to show what protocol, if any, Mr. Somers violated by requesting the information directly himself. The issue of how pardon information is obtained is not addressed in the Code of Laws, Chapter 5 Oneida Pardon Ordinance. Furthermore, there was no evidence Mr. Somers was required to request permission from his supervisor to pursue this information.
4. Handling of Confidential documents.
In June 2005, Mr. Somers anonymously received confidential documents related to the possible transfer of the Security Department from casino management to the Oneida Gaming Commission.
This confidential document titled Memorandum of Understanding and Agreement (MOU), executed in May, 2005 between the Oneida Gaming Commission, Oneida Bingo & Casino General Manager, Oneida Chief of Police, and the Oneida Interim Security Director. Somers subsequently included the documents in a law suit filed in the Oneida Tribal Judicial System wherein Mr. Somers claimed the proposed transfer was illegal. See Somers v. Oneida Bingo & Casino General Manager, 05-TC-086.
The confidential documents related to the possible transfer of the Security Department from casino management to the Oneida Gaming Commission. They were included in a law suit filed by Mr. Som-ers with the Oneida Tribal Judicial System requesting an injunction to stop Respondents from taking action allegedly in violation of the Oneida Nation Gaming Ordinance. (Mar. 29, 2006). This MOU “addressed various issues surrounding the responsibilities and authority of each entity with respect to investigations and other security matters at Oneida Bingo & Casino.” Somers v. OB & C General Manager, et al., 05-TC-085, 2006 WL 6488211 (3/29/06).
In June 2005, “another agreement was executed by the same parties purporting to transfer personnel and money from the Internal Security Department to the Oneida Gaming Commission.” Id.
The Oneida Gaming Commission viewed the disclosure of the documents by Mr. Somers as an “an intentional effort to publicize sensitive and confidential records because of his disagreement with the decision documented therein.” OGC Decision, 1143-47.This statement is not supported by the record. The Oneida Gaming Commission decision does not explain how Mr. Somers’ court filing was “an intentional effort to publicize” the MOU. Had he *243 wanted to publicize the information there are other means to do so rather than take it to the Oneida Tribal Judicial System.
Furthermore, the Oneida Gaming Commission does not explain how it determined that the MOU was in fact a confidential document and that Mr. Somers knew that it was confidential. Nowhere in the MOU does it say it is “confidential.”
The Gaming Commission decision reasons “[t]he Applicant’s actions demonstrate a willful indifference to the security responsibility and concerns at Oneida Bingo & Casino, impulsiveness and a lack of professionalism.” OGC Decision, at ¶ 45, Conclusions of Law, (6/5/2008). However, there is no explanation as to why release of this information jeopardized the security at the Casino.
The Gaming Commission decision states “[t]he Applicant’s failure to handle claim [sic] the anonymously received documents consistent with Oneida Nation policy reveals a pattern of conduct that demonstrates the Applicant’s lack of judgment and an indifference to the security interests of Oneida Bingo & Casino.” Again, there is no explanation as to why Mr. Somers’ actions demonstrated a lack of judgment or indifference to the security interests of the Oneida Bingo & Casino. There is no evidence or argument discussing the consequences of the disclosure of the MOU.
Mr. Somers had a good faith belief the MOU was illegal and backed up that belief by seeking a judicial determination. While the merits of the case were never resolved, one can plausibly argue that he prevented allegedly illegal activity. Preventing illegal activity is not showing an indifference to security and professionalism.
The Oneida Gaming Commission mentions an Oneida policy but does not cite which one. Through research it appears the Oneida Gaming Commission may be referring to the Stand Alone Policy Article IV.4-1 which states, “Employees receiving anonymous information will forward a summary of such information in a confidential manner to the Chief of the Oneida Police Department.” Mr. Somers was not a Tribal employee at the time he received this information so it is questionable whether this policy applied to him at the time in question. The Chief of Police was one of the parties that signed the MOU and may have had an interest in protecting its secrecy from the Court.
About a year after he had been terminated, while litigating his termination (litigation in which he eventually prevailed), the Oneida Gaming Commission is essentially saying Mr. Somers was bound by employee rules of handling confidential information and should have showed more professionalism. Furthermore, this review body questions the basis of this argument when applied to someone who had been fired and had a good faith belief that the documents given to him showed activity in violation of the Oneida Nation Gaming Ordinance.
Mr. Somers did not go to the newspapers he went to a judicial forum. In fact, his activity is arguably protected under the Oneida Employee Protection Policy which shields whistleblowers from harm when they report illegal activity. The Oneida Gaming Commission’s conclusion is clearly erroneous and against the weight of the credible evidence.
5. The Gas Tax Incident
This incident happened on July 13, 2006 at the Oneida One Stop at E and EE when Mr. Somers tried to buy tax exempt gas. Oneida Gaming Commission Decision, Finding of Fact, at ¶ 60.
Mr. Somers purchased tax exempt gasoline even though the Tribe reserves such a *244 benefit only for tribal members who live on the Reservation. Mr. Somers lives off the Reservation. He purchased tax exempt gas without being a resident without incident 19 times between April and July, 2006.
On July 18, 2006 the cashier requested that he show his exemption sticker, which is supposed to be affixed to the back of his Tribal ID. Id. at ¶ 61. A store cashier told Mr. Somers he was required to have the special sticker from the Tribe. According to a statement later provided by the cashier, Somers was abusive during the exchange, but did pay for the gas and the taxes. Id. at 161. Meanwhile, Somers contacted the Director of the Retail Division to complain.
This incident basically boils down to whether Mr. Somers knew he was not authorized to receive tax exempt gasoline but did it anyway. As evidenced in his testimony, Mr. Somers does not agree with, and/or know of, the certificate and residency requirements. The Oneida Gaming Commission, on the other hand, states that Somers knew that he was not eligible for tax exempt gasoline purchases at the time he made those purchases.
The main conflict over Mr. Somers’ certification is whether or not an enrolled Tribal member has to reside on the Reservation, and have a tax exempt sticker, to be eligible for the tax exemption. Mr. Somers at the hearing stated that he had done extensive research into the matter and could not find any Oneida law that requires an enrolled member to live on the Reservation. Mr. Somers further testified that “Tribal members, as long as they’re enrolled and the purchase is made on the reservation, are not required to pay State taxes.”
While it is true Mr. Somers sought the tax exemption when the Tribe did not allow the exemption for off-reservation tribal members, it is not clear if he sought the exemption even after he became aware that the Tribe would not allow it for off-reservation residents. After the July 13, 2006 incident, Mr. Somers stopped seeking the exemption and has not since then. Before that incident Mr. Somers may have simply thought the Tribe agreed with his firmly held view that all tribal members receive the tax exemption. This is not as far-fetched as Mr. Somers purchased gas without incident 19 times between May and July and it is common knowledge in the community that tribal members do purchase tax exempt gas without showing proof of residence.
Even if Mr. Somers did know, this transgression is not sufficient to render Mr. Somers unsuitable for a gaming license. As of April 1, 2006, the Wisconsin tax rate for gasoline was 30.9 cents per gallon. Wis. Stat. § 78.01(1) (2008). Getting the tax exemption is at most, on a par with speeding or crossing against the light. We all know this is wrong, but occasionally most of us have done this at one time or another. There is no denying they are infractions and carry penalties with them. Here, despite Mr. Somers’ actions, no prosecutorial action was taken or ticket issued. It is difficult to see how these activities rise to the level of threatening gaming. The Oneida Gaming Commission decision does not explain why this incident is so compelling. The tax exemption issue is not gaming related and did not result in any charges, much less a conviction.
The seriousness of this issue was reduced further by the Oneida Business Committee action on January 14, 2009. The OBC passed a resolution extending the gas tax exemption to all tribal members regardless of residence. The BC’s action reduces the seriousness of Mr. Som-ers’ conduct because something that threatens gaming or the public interest is *245 unlikely to be made permissible activity by the Business Committee.
6. Norbert Hill altercation
On August 17, 2006, in the course of Mr. Somers’ litigation before the Oneida Personnel Commission, he had an eneoun-ter with the Oneida Personnel Commission Administrator, Apparently the two had a verbal altercation. In our view this is a non-issue. Like the pardon information and Giving Tree incident, this alleged verbal altercation with the Administrator carries very little weight. In fact, this incident was not firmly established in the record, as only Mr. Somers testified about it and he stated the Administrator was the aggressor.
These incidents do not show how Mr. Somers would be a threat to the effective operation of gaming or the public interest. At most, Mr. Somers is a strong-willed individual who may be lacking in tact and diplomacy skills but has strived to do his job without the blinder of politics or family attachments.
Based on the evidence in the record the Oneida Gaming Commission has failed to convince this Court that Mr. Somers’ prior or present activities conclusively support a finding that he was a threat to the public interest or the effective operation of gaming. Similarly, the record does not conclusively indicate that Mr. Somers created or enhanced unfair or illegal gaming practices. Reading the record as a whole, Mr. Somers can not be characterized as a threat. It is the opinion of this Appellate Court that the employee gaming license process presented in the Oneida Nation Gaming Ordinance is designed to screen out individuals who are likely to intentionally undertake acts to defraud, steal or otherwise harm the Oneida Tribal gaming operation. Mr. Somers actions do not place him within that category.
It appears the Oneida Gaming Commission took about a year to place Mr. Som-ers’ conduct under a microscope and then pick the incidents they thought would support their case. It is not enough. The Oneida Gaming Commission decision is clearly erroneous and against the weight of the evidence
When compared against the backdrop of the cases mentioned above where illegal gambling, driving under the influence and cheating at black jack have served as basis for revocation or denial, the record against Mr. Somers is insufficient to meet the standard expressed in Sec. 21.10-3(a) of the Oneida Nation Gaming Ordinance.
IY Decision
The decision of the Oneida Gaming Commission is reversed. The Oneida Gaming Commission is ordered to grant Mr. Owen Somers a gaming license within 10 business days of receiving this decision.
Upon the reissuance of his gaming license Mr. Somers will be reinstated to his former position as the Director of the Security Department at the Oneida Bingo & Casino.
It is further ordered that this case shall not be held against Mr. Somers in any future decisions made about Mr. Somers’ employment or his work conditions.
It is further ordered: Mr. Somers shall be made whole of all wages, benefits, bonuses, and merit increases denied him since his most recent termination on December 13, 2007. Mr. Somers shall be reimbursed reasonable expenses resulting from this current litigation since December 13, 2007 to the date of this decision as follows. Pursuant to Rule 18(E), of the Rules of Civil Procedure, reimbursement shall include filing fees and copying fees dating back to the beginning of this case and since the final decision to reinstate *246 Mr. Somers rendered by the Oneida Personnel Commission in October of 2005. There shall not be an award of attorney fees case Somers v. Oneida Police Dept. Docket No. 06-AC-009,
Even allowing for unforeseen events, the process of re-issuance of a gaming license and reinstatement shall not take any longer than forty five (45) calendar days from the receipt of this decision. Should this process take longer than forty five (45) calendar days this decision will serve as notice of the Hearing date for Contempt which will be held on June 8, 2009 at 9:00 a.m. in the court room of the Oneida Tribal Judicial System, located at 3759 W. Mason St. Oneida, Wisconsin.
The parties shall report to the Court when the order has been complied with.
IT IS SO ORDERED.